# Hughes' Minors' Appeal.

1. A guardian has no control of his ward's real estate, except what relates to leasing it and receiving the rents and profits, and it is his duty to lease the land.

2. He is bound to keep the real and personal estate safely, and to account for the personal estate and the rents and profits of the real estate.

3. If he neglects to put his ward's money at interest; suffers it to lie idle for an unreasonable time or mingles it with his own, he will be chargeable with simple interest; in cases of very gross delinquency with compound interest.

4. He is bound to use the same care and management that a prudent man would exercise in his own affairs; he must act for the ward, not for himself.

5. The register should not permit a guardian to file an account which is not "a full and complete account of his management, including all the items embraced in each partial settlement."

APPEAL from the decree of the Orphans' Court of *Allegheny county*, confirming the account of George Weyman, guardian, &c., of Wyoming Hughes, Missouri Hughes, Lambert Hughes and Edward McDonald Hughes, minor children of Edward Hughes, deceased.

Weyman, the guardian, on the 20th of November 1862, filed his guardianship account, which was confirmed nisi, December 22d following.

The account was long, contained numerous items, and extended from November 1851 to the time of filing. It included two general statements—one to July 1856, the other to November 1862—of receipts and expenditures of what appeared to be the whole of the decedent's estate, including the widow's interest. It contained also distinct statements of receipts and expenditures for each minor up to the same periods. The accompanying extract will exhibit the manner in which the account was stated.

"Final account of George Weyman, Guardian of Wyoming, Missouri, Lambert, and Edward McDonald Hughes, minor children of Edward Hughes, deceased, late of Allegheny county, state of Pennsylvania.

| | | |
|---|---|---|
| Amount of cash received per account rendered November 1851 - - - | | $3343.10 |
| Amount of cash paid for expense account, as per account rendered November 1851, | $1052.90 | |
| Amount of cash paid widow, as per account rendered November 1851 - - - | 868.70 | |
| Amount of cash paid to children, as per account rendered November 1851 - | 838.02 | |
| Amount of balance per account - - | 583.48 | |
| | | 3343.10 |

[Hughes' Minors' Appeal.]

| | | |
|---|---|---|
| Amount of cash received, per account rendered July 1856 - - - - | | $9246.40 |
| Amount of cash paid out, per account rendered July 1856 - - - - | $2415.02 | |
| Widow's one-third - - - - | 2277.12 | |
| Wyoming's one-quarter - - - | 1138.56½ | |
| Missouri's one-quarter - - - | 1138.56½ | |
| Lambert's one-quarter - - - | 1138.56½ | |
| Edward McD.'s one-quarter - - - | 1138.56½ | |
| | | $9246.40 |

George Weyman charges himself as follows:—Wyoming's account rendered July 1856.

| | | |
|---|---|---|
| To amount of balance from first account | $145.87 | |
| "  "  "  "  " second " | 1138.56 | |
| | | $1284.43½ |

George Weyman, guardian, craves credit as follows:—

| | | |
|---|---|---|
| By amount of cash paid to Wyoming, per account rendered July 1856 - - | $805.56 | |
| Balance to Wyoming's credit - - | 478.87½ | |
| | | $1284.43½" |

The account further showed, due November 1862:—

| | |
|---|---|
| From Wyoming - - - - - - - | $448.32 |
| " Missouri - - - - . - - - | 360.57 |
| To Lambert - - - - - - - - | 79.56 |
| " Edward - - - - - - - - | 254.73 |

Exceptions to the account on behalf of the minors were filed, December 31st 1862; the evidence before the auditor related only to the following:—

1. That the guardian had not charged himself with the rent for eight years of a brewery and two acres of land, property of the minors in Pittsburgh.

2. That he was chargeable with the loss in value of the improvements on the premises and dilapidation, on account of his refusal to rent them.

5. That he should be charged with money due by A. & A. Wood to said estate.

7. That the account is irregular, and should be itemized from the first account and a general exhibit of the whole made.

The account and exceptions were referred to B. F. Lucas, Esq., as auditor, " to restate the account and report thereon."

The auditor reported that shortly after the guardian's appointment he had rented the brewery to A. & A. Wood for four years, ending October 1st 1856, at a rent averaging $1350 per annum. The Woods had failed, and for eighteen months or more of their lease had been doing business as agents for others; they removed without paying the rent for the last two quarters; no effort was

made to collect it until January 28th 1857, when a suit was brought against them, which had not been prosecuted to judgment. The Woods left the property in so bad repair that it was difficult to rent it at all, and impossible to lease it for nearly the rent which has been paid by them. Rhodes & Verner about that time offered to rent the brewery for a term of seven or ten years, to put the property in repair and pay a small money rent. The guardian declined the offer, because they would not agree to leave the property in as good a condition as they were to put it in.

W. H. Garrard offered to rent the brewery for from $600 to $800, which amount did not clearly appear; this offer was declined. The guardian made efforts to lease the property at a high rent from the expiration of the Woods' lease. He was advised by his counsel Mr. Wood to lease it for the best price he could get.

The auditor surcharged the accountant with the two quarters' rent due from Woods, with rent for four years and a half, at $600 per annum, as the amount which would have been received under the offer of Garrard; also with interest upon the rent from both these sources, to December 31st 1862; he also charged him with interest on money in his hands beyond disbursements up to the same date.

He also stated separate accounts between the guardian and the several wards, and found that there was due to

| | |
|---|---|
| Wyoming Hughes, - - - - | $556.10 |
| Missouri Hughes, - - - - | 647.86 |
| Lambert Hughes, - - - - | 1,018.00 |
| Edward McD. Hughes, - - - | 1,311.17 |

The wards excepted to the report of the auditor as allowing the guardian too much compensation; not charging him with enough interest, and not charging him with what would have been received in money and improvements under the offer of Rhodes & Verner.

The guardian excepted for charging him with rent for the full term of the Woods and with rents subsequent to its end; for not allowing certain items of credit in his account and for charging him with interest.

The Orphans' Court, October 6th 1866, overruled the exceptions of the wards, sustained the exceptions of the guardian, confirmed his account and directed the exceptants to pay the costs.

The wards appealed and assigned for error the decree of the Orphans' Court overruling their exceptions and confirming the guardian's account.

*S. A.* and *W. S. Purviance*, for appellants, cited Landis *v.* Scott, 8 Casey 503; Yeager's Appeal, 10 Id. 175; Carskadden *v.* McGhee, 7 W. & S. 140; Guthrie's Appeal, 1 Wright 1; 2

Kent's Com. 229; Konigmacher *v.* Kimmel, 1 Penna. R. 213; Moore's Appeal, 10 Barr 438.

*R. Woods* and *G. Shiras,* Jr., for appellee.

The opinion of the court was delivered, January 14th 1867, by
READ, J.—The guardian of the estate has no further concern with or control over the real estate than what relates to the leasing of it and the reception of the rents and profits, *and it is his duty to place the ward's land upon lease.* He has such an interest in the estate of his ward as to enable him to avow for *damage feasant,* maintain ejectment, trespass, debt and distrain for arrears of rent in his own name. He is bound to keep safely the real and personal estate of his ward, and to account for the personal estate, and the issues and profits of the real estate. If he neglects to put the ward's money at interest, but negligently and for an unreasonable time suffers it to lie idle, or mingles it with his own, the court will charge him with simple interest, and in cases of very gross delinquency with compound interest: Harland's Accounts, 5 Rawle 333. A guardian is a trustee for persons whom the law regards as unable to act for themselves, and he is bound to use the same care and management that a prudent man would exercise over his own affairs. He must act for the ward, and not for himself.

The account in this case has been filed in direct contravention of the Act of Assembly as explained by me in Yeager's Appeal, 10 Casey 176, and required an entire restatement at the hands of the auditor. This re-examination disclosed several matters, which were specially reported upon by the auditor in a very able and exhaustive report. The court disregarded the auditor's report, and confirmed the original defective and improper account of the guardian, which should never have been permitted to be filed in the register's office, it not being in any way or form in compliance with the express provisions of the law.

The error of the accountant in not presenting to the register for settlement "a full and complete account of his management of the minors' property under his care, including all the items embraced in each partial settlement," prevented, of course, any examination by that officer of the account (as it should have been stated), with the necessary vouchers, of the several items contained in it.

The effect of this cardinal error, was to oblige the court to vest the auditor with full power to restate the account, that is, to make a full and complete account of the guardian's management, including all the items embraced in each partial settlement. He was also to consider all questions arising from the exceptions filed by the attorneys for the minors, and to hear and determine the same.

[Hughes' Minors' Appeal.]

It was the duty of the guardian to collect the rents and profits of the land; and it was also his duty to place the wards' land upon lease. Both duties are equally imperative, for if the property of the wards consisted only of land, then in case of neglect of either or both of these duties, the wards would have no means of support.

1. As to the two quarters' rent due from A. & A. Wood of the brewery, in the Fifth Ward, we think the guardian should be charged with the first quarter only, and not with the second quarter, under all the circumstances. If he had distrained in time, that quarter would have been secured; and this was clearly his duty, considering that the lease expired at the end of the next quarter, and the tenants were known to be in great difficulties.

2. A brewery has only a choice, if any, of a very limited number of tenants. No skill or industry can increase that number; and in this case the guardian had tried the experiment without success. Besides, a brewery, however good, if not used, falls rapidly into decay, and it is absolutely necessary to let it even for a small rent to preserve it. This brewery was also known to the guardian to require a tenant, in order to preserve it, and the manner and situation in which the Woods left it made it a matter of the first necessity to lease it as soon as possible.

We agree with the auditor that the guardian should not be charged with the effect of his refusal of the offer of Messrs. Verner & Rhodes in 1856 or 1857, to lease it for a term of from seven to ten years upon the terms specified by them. But we also agree with the auditor, that in rejecting about two years afterwards the offer of Mr. Garrard, he was guilty of such want of ordinary care and diligence in the management of this property as no prudent man could justify, even if the property were his own, still less when as a trustee he was acting for others who could not act for themselves.

A trustee has only two offers in the course of two years for the lease of a brewery, and none afterwards—is not this such negligence (call it by any epithet you please), such neglect of duty, as to make him personally liable to his *cestui que trust?* We think the auditor has fairly made out such a case, and therefore approve this portion of the report.

The restatement showed what did not appear in the mode in which the account was filed, balances in the guardian's hands, upon which the auditor properly charged him with interest.

The result is, the decree of the Orphans' Court is reversed, and the report of the auditor (with the correction of not charging the guardian with the last quarter of the Woods' rent of the brewery) is confirmed, all costs of all the proceedings to be paid out of the funds in the hands of the guardian, including the costs of this appeal.